UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CHRISTINE BLANDA,

            Plaintiff,

v.                                    Civil Action No. 2:16-0957

MARTIN & SEIBERT, L.C.,
and WALTER M JONES, III, ESQ.,
and GEOFFREY A. HADDAD, ESQ.,
and MICHAEL M. STEVENS, ESQ.,
and E. KAY FULLER, ESQ., and
SUSAN R. SNOWDEN, ESQ., and
NIKKI MOORE GRESS, individually,

            Defendants.

                    MEMORANDUM OPINION AND ORDER

        Pending is a motion to stay civil proceedings pending

conclusion of related criminal proceedings, filed by defendants

on February 24, 2016.


                    I.    Background


        The following facts are taken from plaintiff's

complaint.  Plaintiff Christine Blanda worked as an accounts

receivable clerk at the defendants' law firm, Martin & Seibert,

L.C. ("Martin & Seibert"), in Martinsburg, West Virginia, from

2005 until January 26, 2015.  Pl. Compl. ¶ 4.  She claims that,

on January 26, 2015, defendants fired her because she complained

to her supervisor about the firm's "excessive and unjustified

billings to publicly traded companies," and because she

1

"cooperat[ed] with other professionals to bring to the attention of the FBI the mail and wire fraud being committed by Defendant in the course of its billing practices." **Id.** at ¶ 5.  She helped "non-law-enforcement professionals" in their investigation of the firm's billing practices during her employment there.  **Id.** at ¶ 8.  On November 17, 2015, several months after she had been fired, the FBI executed a search warrant "to determine whether and the extent to which the Defendant had violated the mail and wire fraud statutes by billing publicly traded companies for hours that were not actually worked."  **Id.** at ¶ 7.  Plaintiff also claims that some of the defendants have threatened her, along with other whistleblowers, by telling third parties of a plan to "mount a campaign to destroy them."  **Id.** at ¶ 9.

Plaintiff's claims arise from several federal statutes and state tort law.  In particular, she sued under 15 U.S.C. § 78u-6(h)(1)(A)i-iii, which protects whistleblowers from being fired for giving lawful assistance to the Securities and Exchange Commission;[1] under 18 U.S.C. § 1513(e), which prohibits

---

[1] **(h) Protection of whistleblowers**

    **(1) Prohibition against retaliation**

        **(A) In general**

        **No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and**

any harmful retaliation against persons for "providing to a law

enforcement officer any truthful information relating to the

commission or possible commission of any Federal offense";[2] and

under 18 U.S.C. § 1514A(a), which prohibits public companies or

their contractors and agents from retaliating against an

employee who provides information or assistance to an

investigation when the employee reasonably believes there has

been a violation of any of several enumerated laws, including

the Wire Fraud statute.[3]  She also sues for a violation of the

_____

> conditions of employment because of any lawful act
> done by the whistleblower—
>
> > (i) in providing information to the Commission in
> > accordance with this section;
> >
> > (ii) in initiating, testifying in, or assisting
> > in any investigation or judicial or
> > administrative action of the Commission based
> > upon or related to such information; or
> >
> > (iii) in making disclosures that are required or
> > protected under [various legal sources].

15 U.S.C. § 78u-6.  The term "Commission" here refers to the
Securities and Exchange Commission.  See 15 U.S.C. § 78c(a)(15).

[2] "Whoever knowingly, with the intent to retaliate, takes any
action harmful to any person, including interference with the
lawful employment or livelihood of any person, for providing to
a law enforcement officer any truthful information relating to
the commission or possible commission of any Federal offense,
shall be fined under this title or imprisoned not more than 10
years, or both."  18 U.S.C. § 1513(e).

[3] "No company with a class of securities registered under section
12 of the Securities Exchange Act of 1934 . . . or any . . .
contractor, subcontractor, or agent of such company . . . may
discharge, demote, suspend, threaten, harass, or in any other
manner discriminate against an employee in the terms and

common-law prohibition on retaliatory discharge, citing <u>Harless</u>

<u>v. First Nat'l Bank in Fairmont</u>, 169 W. Va. 673, 289 S.E.2d 692

(1982).[4]

Defendants have moved to stay the case pending

conclusion of the related criminal proceedings.  In their

motion, defendants acknowledge that the FBI seized "electronic

---

conditions of employment because of any lawful act done by the
employee—

(1) to provide information, cause information to be
provided, or otherwise assist in an investigation regarding
any conduct which the employee reasonably believes
constitutes a violation of section 1341, 1343, 1344, or
1348, any rule or regulation of the Securities and Exchange
Commission, or any provision of Federal law relating to
fraud against shareholders, when the information or
assistance is provided to or the investigation is conducted
by—

(A) a Federal regulatory or law enforcement agency;

(B) any Member of Congress or any committee of
Congress; or

(C) a person with supervisory authority over the
employee (or such other person working for the
employer who has the authority to investigate,
discover, or terminate misconduct) . . . ."

18 U.S.C. § 1514A(a).

[4] Plaintiff may have intended to rely on a different opinion from
the same action, <u>Harless v. First Nat. Bank in Fairmont</u>, 162 W.
Va. 116, 246 S.E.2d 270 (1978), which held that "The rule that
an employer has an absolute right to discharge an at will
employee must be tempered by the principle that where the
employer's motivation for the discharge is to contravene some
substantial public policy principle, then the employer may be
liable to the employee for damages occasioned by this
discharge."

records" and "numerous documents" from their office on November
17, 2015, but they note that "the FBI and U.S. Attorney's Office
have declined to provide Defendants with information regarding
the status or scope of the investigation."  Def. Mot. to Stay at
2.  They go on to state that, "[t]o the best of Defendants'
knowledge, the investigation involves allegations of mail and
wire fraud in connection with their billing practices."  Id.
Further, they allege that if a stay is not granted, the
individual defendants "would be faced with the impossible choice
of either asserting their Fifth Amendment privilege against
incrimination in this matter[,]" from which an adverse inference
may be drawn in this civil action, "or waiving that privilege
and risking criminal repercussions."  Def. Memo. in Supp. of
Mot. to Stay at 2.  Plaintiff opposes the stay, arguing that it
would unduly prejudice her and, if her lawsuit is successful, an
indefinite stay would make it more difficult to recover from
defendants in the future.  Pl. Resp. to Mot. to Stay at 7-8.

        On August 19, 2016, the court held a telephone
conference with the parties and requested that they engage in
discussions to determine whether they could agree on any
discovery matters.  The parties filed a joint report with the
court on September 7, 2016.  See Joint Report of the Parties
(ECF Doc. No. 14).  The court held a second telephone conference

with the parties on September 9, 2016, during which they
confirmed that they were unable to come to an agreement as to
any discovery matters.

## II.  Legal Standard

"'[T]he power to stay proceedings is incidental to the
power inherent in every court to control the disposition of the
causes on its docket with economy of time and effort for itself,
for counsel, and for litigants.'"  Maryland v. Universal
Elections, Inc., 729 F.3d 370, 379 (4th Cir. 2013) (quoting
Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  "The
determination by a district judge in granting or denying a
motion to stay proceedings calls for an exercise of judgment to
balance the various factors relevant to the expeditious and
comprehensive disposition of the causes of action on the court's
docket."  United States v. Georgia Pac. Corp., 562 F.2d 294, 296
(4th Cir. 1977) (citing Landis, 299 U.S. at 254).

"'Because of the frequency with which civil and
regulatory laws overlap with criminal laws, American
jurisprudence contemplates the possibility of simultaneous or
virtually simultaneous parallel proceedings and the Constitution
does not mandate the stay of civil proceedings in the face of
criminal proceedings.'"  Universal Elections, 729 F.3d at 370

(quoting Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 530
(S.D.W.V. 2005)).  "Stays generally are not granted before an
indictment has issued." Id.  But "[i]t is still possible to
obtain a stay, even though an indictment or information has not
yet been returned, if the Government is conducting an active
parallel criminal investigation." Walsh Sec. v. Cristo Prop.
Mgmt., 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (citation and
internal quotation marks omitted).  Several district courts have
indeed granted stays even though no indictment has yet issued,
where the civil defendant is a target of the criminal
investigation or is about to be indicted.  See Walsh, 7 F. Supp.
2d 523 (granting a stay when search warrants and subpoenas had
been issued to several of the civil defendants, the civil
defendants were informed that they were targets of the
investigation, and the government had indicated to the court
that the investigation was continuing); SEC v. Healthsouth
Corp., 261 F. Supp. 2d 1298 (N.D. Ala. 2003) (granting a stay
when others involved in the criminal scheme had pled guilty, the
FBI had raided a defendant's office, and "everyone assume[d]"
the civil defendants would be indicted "in the near future");
Brumfield v. Shelton, 727 F. Supp. 282 (E.D. La. 1989) (granting
a stay when the civil defendant was a target of a grand jury
investigation).

Federal courts have applied a variety of tests to decide whether to stay civil actions pending criminal proceedings.  The Fourth Circuit has not explicitly endorsed any particular test.

In Ashworth, this court relied on the Ninth Circuit's test articulated in Keating v. OTS that considered five factors in determining whether to grant a stay:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Ashworth, 229 F.R.D. at 530 (citing Keating, 45 F.3d 322, 325 (9th Cir. 1995)).  The court in Ashworth considered, in addition to these five factors, the "relatedness" of the criminal and civil proceedings, asking whether they "involve substantially similar issues."  229 F.R.D. at 531.  These six factors will guide the analysis in this matter.

### III. Discussion

#### A. Application of the Relevant Factors

##### 1. Relatedness

"As a preliminary matter, the requirement of the existence of a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues is the threshold factor for a stay." Ashworth, 229 F.R.D. at 531.  Without this nexus, "the myriad of tangible concerns in favor of a stay, including the protection of a defendant's Fifth Amendment interest and the deleterious effect of civil discovery on the prosecution or defense, dissipates."  Id.

Defendants argue that the civil and criminal proceedings are sufficiently related and involve substantially similar issues, warranting a stay.  Def. Memo. in Supp. of Mot. to Stay at 4-5.  According to them, "[w]hether fraudulent practices took place (or whether Plaintiff had a good-faith basis to believe they did) and whether Plaintiff did, in fact report those practices to the FBI go to the heart of her retaliatory discharge claim."  Id. at 5.  Further, they state that plaintiff's claim that defendants' conduct amounts to

threatening a witness in an ongoing federal criminal
investigation "clearly relates directly to the government's
criminal investigation."  Id.

     Plaintiff's claims, as noted, are pursuant to 15
U.S.C. § 78u-6(h)(1)(A)i-iii, 18 U.S.C. § 1513(e), and 18 U.S.C.
§ 1514A(a) for "retaliatory discharge as an employee of an agent
and/or contractor of [a] publicly traded corporation."  Pl.
Compl. at 1.  In addition, she alleges violation of the common-
law prohibition on retaliatory discharge.  Id. at 1-3.
Plaintiff also alleges that defendants threatened her, which she
states amounted to the threatening of a federal witness, in
violation of 18 U.S.C. § 1514(e) and 18 U.S.C. § 1503.[5]  Id. at
3.

     As to the potential criminal charges against
defendants, plaintiff alleges in her complaint that she
participated in helping "non-law-enforcement professionals"

---

[5] Although plaintiff cites to 18 U.S.C. §§ 1514(e) and 1503 for
the prohibition against tampering with a federal witness, there
is no section 1514(e), and while the prohibition against
tampering with a witness was once contained in section 1503, it
is now contained in section 1512(b)(1).  In addition, under
section 1512(d), it is unlawful to "intentionally harass[]
another person and thereby hinder[], delay[], prevent[] or
dissuade[] any person from (1) attending or testifying in an
official proceeding."  18 U.S.C. § 1512(d)(1).

investigate defendants' excessive and unjustified billing
practices, which constituted mail or wire fraud.  Id. at 2.

       Some of plaintiff's causes of action may be unrelated,
or minimally related, to whether defendants committed mail or
wire fraud.  The claim under § 1514A(a), however, turns on
whether the employee has acted "to provide information, cause
information to be provided, or otherwise assist in an
investigation regarding any conduct which the employee
reasonably believes constitutes a violation of" various
statutes, including the Wire Fraud Act.  18 U.S.C. § 1514A
(emphasis added).  It is difficult to imagine how the litigants
will develop the case as to whether the employee "reasonably
believed" that the defendants were engaged in criminal activity
without confronting the core question of whether they were
engaged in the criminal activity proscribed by 1514A(a).  The
claim under § 1513(e) similarly turns on whether defendants took
"any action harmful to [plaintiff]" for plaintiff's "providing
. . . [of] any truthful information relating to the commission
or possible commission of any Federal offense."  18 U.S.C. §
1513(e) (emphasis added).  Proving a violation thereof will
require showing that the information plaintiff provided to the
government was truthful.  Much of the same testimony regarding
their actions, and the same documentary evidence, will be

required in dealing with those same issues.  The two proceedings
are plainly related.[6]

2.  Prejudice to plaintiff of a delay

Plaintiff argues that she has a "very substantial
interest in expeditious litigation of her case.  If there is a
criminal indictment, the Defendant law firm could well go
bankrupt, and the individual Defendants could well go to jail."
Pl. Resp. to Def. Mot. to Stay at 7.  Defendants call
plaintiff's bankruptcy argument "a baseless speculation" and
state that plaintiff "is in no different a situation than any

---

[6] Plaintiff cites United States v. Kordel, 397 U.S. 1 (1970), for
the proposition that "[i]f the civil proceeding involves alleged
violations of a different statute than does the criminal
proceeding, then it cannot be said that the proceedings will
vindicate the same public interest and a pre-indictment stay is
not warranted."  Pl. Resp. to Def. Mot. to Stay at 1-2.
However, the posture of Kordel was very different than that of
the present case, in that the government there concurrently
instituted both the civil and the criminal proceedings against
the defendants, who did not challenge the parallel proceedings
until after some of them had already answered questions in a
civil proceeding, that were then used against them at the
criminal trial.  Unlike Kordel, Blanda, not the government
instituted this civil proceeding and the defendants have not
been convicted or even been indicted of any criminal charges.
And the Kordel opinion noted that the petitioners had moved for
a stay in the parallel civil case, but had expressly declined to
make any argument based on their Fifth Amendment rights.  Id. at
1.  As discussed more thoroughly below, defendants here have
raised the Fifth Amendment argument rather than waiving it.

other plaintiff in any other civil litigation matter." Def. Reply Memo. at 6. Defendants also argue that plaintiff will not be prejudiced because she has a new job where her salary is higher than it was at Martin & Seibert. Id. at 5. In support of this, defendants have submitted the affidavit of Morgan Boyer, a former employee of Martin & Seibert, which states that plaintiff told her that since being fired by defendants, plaintiff has a new job where she is making more money than she did at Martin & Seibert. See Exhibit 1 to Def. Reply Memo.

Because plaintiff has asked, as part of her relief, that she be reinstated at work, she may be prejudiced by a delay. If plaintiff has in fact found a new job where she is making more money than she did at Martin & Seibert, this eliminates some of the prejudice in any delay in being reinstated to her previous position. See id. Even if plaintiff does not currently have a higher paying job, the court can confront this problem by awarding back pay to plaintiff for the entire period beginning with her discharge, which is the relief she has requested in her complaint. Pl. Compl. at ¶¶ 11, 12. Defendants also argue that this would alleviate any prejudice to plaintiff caused by the delay. Def. Mem. in Supp. of Mot. to Stay at 6.

However, plaintiff's ability to collect back pay may
be seriously hampered by her concern that the individual
defendants could go to jail and the defendant law firm could go
bankrupt.  Given that the government has not pursued charges,
this stay could last for an extended period.  This is supported
by plaintiff's statement that Michael Stein, Esq., the Assistant
U.S. Attorney in charge of the investigation stated that, "the
criminal proceedings will not be completed anytime in the
foreseeable future . . . because of lack of adequate staff for
the 'privilege team,'" who is responsible for sorting through
the documents seized from defendants to determine which
documents are protected by attorney-client privilege.  Joint
Report of the Parties at 2.  A stay would therefore delay
plaintiff's ability to recover until the government musters
adequate manpower to sort through the some 500,000 documents
said to have been seized and decides whether to pursue charges
against defendants.  It is also possible that the defendants are
never indicted, of which this court and plaintiff will likely be
unaware unless and until the statute of limitations has run on
the criminal charges.  Further, whether defendants will be
available to pay a judgment to plaintiff is more worrisome given
that plaintiff does not yet know the extent of Martin &
Seibert's insurance coverage.  Pl. Resp. to Def. Mot. to Stay at

7; Joint Report of the Parties at 2.  Thus, this factor weighs
against a stay.

### 3. Burden on defendants

        Defendants contend that the court would infringe upon
their Fifth Amendment rights by declining to order a stay, as
there is a "very real fear for a penalty in the form of an
adverse inference should Defendants invoke their Fifth Amendment
privilege during the course of this litigation." Def. Mem. in
Supp. of Mot. to Stay at 6-7.  They note that refusal to answer
questions may be used as an adverse inference against them in a
civil proceeding, and invocation of the privilege would damage
their ability to prevail in this case.  See Morley v. Cohen, 888
F.2d 1006, 1012 (4th Cir. 1989).  Further, because defendants do
not know the scope of any possible criminal charges, they state
that almost any testimony could help the prosecutors build a
case against them.  For this reason, they have declared an
intention to invoke their Fifth Amendment rights extensively
during discovery.  Def. Mem. in Supp. of Mot. to Stay at 6-7.
Plaintiff responds that defendants "will need to take the Fifth
Amendment in the civil trial regardless of when it occurs."
Pl. Resp. to Mot. to Stay at 8.

In <u>Ashworth</u>, in considering the burden on the
defendants, this court examined whether the defendants had yet
to be indicted by the government on criminal charges.  229 F.R.D
at 531.  As the Circuit Court for the District of Colombia
explained:

> Other than where there is specific evidence of agency bad
> faith or malicious governmental tactics, the strongest case
> for deferring civil proceedings is where a party under
> indictment for a serious offense is required to defend a
> civil or administrative action involving the same matter.
> The noncriminal proceeding, if not deferred, might
> undermine the party's Fifth Amendment privilege against
> self-incrimination, expand rights of criminal discovery
> beyond the limits of Federal Rule of Criminal Procedure
> 16(b), expose the basis of the defense to the prosecution
> in advance of criminal trial, or otherwise prejudice the
> case.

<u>SEC v. Dresser</u>, 628 F.2d at 1375-76.  These concerns are not the
same before an indictment has been issued.  Preindictment,

> it is inherently unclear to the Court just how much the
> unindicted defendant really has to fear. . . . There is no
> telling how complicated the government's investigation may
> be, whether the allegations of the particular civil
> plaintiff are merely the tip of an iceberg that will result
> in a lengthy and open-ended investigation, what priority
> the government assigns to the investigation, whether it
> will result in charges that will have to be litigated, or
> how time-consuming the resulting criminal case will be.

<u>Sterling Nat. Bank v. A-1 Hotels Intern., Inc.</u>, 175 F. Supp. 2d
573, 577 (S.D.N.Y. 2001).  Although in <u>Ashworth</u>, the defendants
had yet to be indicted on criminal charges, the government had
informed the court that not only were three of the defendants

16

targets of a criminal investigation, but also that indictments would be forthcoming by a specific date, within two months of the date of the court's opinion.  229 F.R.D. at 531; see also 229 F.R.D. at 531, n. 3 ("Under the circumstances, the fact that an indictment has not issued is not fatal to the stay request inasmuch as any uncertainty has been displaced by the representation that indictments will be forthcoming . . . which representation is fortified by the other indictments and convictions that have already occurred.").

Here, however, there are no indictments and there is no information that indictments will be forthcoming against defendants.  Further, based on information provided by the parties, it appears that the criminal investigation has been delayed by the lack of personnel tasked with determining attorney-client privilege issues relating to the large quantity of documents taken from defendants by the government.  Joint Report of the Parties at 2.  Because it is unclear when, if ever, the defendants will be indicted, the potential burden on defendants if the stay is not issued is somewhat lessened.

The individual defendants, Walter Jones, III, Geoffrey Haddad, Michael Stevens, E. Kay Fuller, Susan Snowden, and Nikki Moore Gress, are free to assert their Fifth Amendment privilege in response to questions during discovery or at trial.  Despite

the fact that they have not been indicted and may not be indicted in the foreseeable future, because the individual defendants do not know the extent of the government's criminal investigation against them, they will likely assert their Fifth Amendment privileges extensively, and they have expressed their intentions to do so.  <u>See</u> Def. Memo. in Supp. of Mot. to Stay at 6-7.  This weighs in favor of a stay for the individual defendants.

The issue of Fifth Amendment privileges changes when applied to the defendant law firm, Martin & Siebert, which does not itself have such a privilege.  <u>See</u> <u>George Campbell Painting Corp. v. Reid</u>, 392 U.S. 286, 288-89 (1968).  Because Martin & Siebert is a law firm, and many of its owners and managers will likely be implicated in any criminal investigation for the firm's overbilling, it is reasonable to assume that some of its employees and owners could not answer questions about this lawsuit without risking exposure to criminal prosecution.  Thus, at least some of them could be expected to assert the Fifth Amendment privilege.

Despite the possibility that some employees and owners of the law firm may assert their own individual Fifth Amendment privileges, this does not give Martin & Seibert that same Fifth Amendment privilege.  <u>See</u> <u>Fidelity Funding of California v.</u>

Reinhold, 190 F.R.D. 45, 52 (E.D.N.Y. 1997) (finding that "[a]ny use [a] corporate defendant[] may have made of individual defendant's exercise of the Fifth Amendment privilege is merely a windfall. [The company] cannot . . . interpose the willingness to provide future testimony by a defendant legitimately asserting the Fifth Amendment in an effort to collect yet another windfall through a stay of any pre-trial proceedings."). Further, there is no evidence that every Martin & Seibert employee will raise a Fifth Amendment privilege. This weighs against a stay for defendant Martin & Seibert.

Defendants have also stated that they would be further prejudiced if there is no stay because the FBI has seized numerous records, but they do not know exactly which records are missing. Def. Memo. in Supp. of Mot. to Stay at 8-9. Defendants believe that the government seized some documents, such as documents from plaintiff's personnel file, which are crucial to their defense in this action. Def. Memo. in Supp. of Mot. to Stay at 8-9. Thus, defendants' ability to defend themselves may be hampered by the government's possession of exculpatory material. Id.

In response, plaintiff states that she does not need access to any of the documents seized by the FBI for her case. Pl. Resp. to Mot. to Stay at 7-8. To the extent that defendants

19

need documents in possession of the FBI for their defense,
plaintiff asserts that defendants can ask the FBI for copies or
obtain a court order.  Id. at 8.

Defendants also express concern that an effort to
settle the case will be seen as an attempt to bribe plaintiff,
who would presumably be a witness in any forthcoming
prosecution.  Def. Memo in Supp. of Mot. to Stay at 10.
Defendants cite to none, and the court is unaware of any cases
that would implicate defendants in bribery or other criminal
wrongdoing for engaging in settlement negotiations of
plaintiff's claims where plaintiff initiated the settlement
discussions and the process was pursued with some degree of
judicial oversight.

4. Convenience to the court

Granting the stay may be convenient for the court
inasmuch as "the resolution of the criminal case may later
streamline discovery in the civil case."  Ashworth, 229 F.R.D.
at 532 (quoting Bridgeport Harbour Place I, LLC v. Ganim, 269 F.
Supp. 2d 6, 9 (D. Conn. 2002)).  However, unlike Ashworth, where
the court knew that the investigation was proceeding and that
indictments were forthcoming, in this case the court does not
know whether indictments will ever be issued, and if issued, it

does not appear that it will occur in the near future.  Thus, a stay would burden the court inasmuch as it "would substantially halt the civil litigation indefinitely, without any predictability as to when the case would return to the court's active docket."  See Sterling Nat. Bank, 175 F. Supp. 2d 573; see also Digital Equip. Corp. v. Currie Enters., 142 F.R.D. 8, 13 (D. Mass. 1991) (finding that a stay would require the court to "rely upon fortuitous events to manage its docket").  This factor, which the court regards in this case to be the least in consequence, does not weigh heavily in favor of or against a stay.

5.  Interests of persons not parties to litigation

        Defendants note that third parties who are not defendants in this lawsuit may also be asked to submit evidence that the government could use against them in any contemplated criminal proceeding.  Def. Memo. in Supp. of Mot. to Stay at 10-11.  Plaintiff disputes that there is anyone other than defendants who will be asked to submit evidence in this matter.  Pl. Resp. to Def. Mot. to Stay at 8.  Nevertheless, it seems likely that if access to the individual defendants is stayed, information may be sought from employees or others with knowledge of the events.  In the event that this occurs, the

witnesses may assert their Fifth Amendment privilege to the extent it is available.

Defendants further argue that the government has a strong interest in an unimpeded criminal investigation.  Def. Memo. in Supp. of Mot. to Stay at 11.  This argument is weakened by the fact that unlike Ashworth, the government could have and chose not to intervene and join in defendants' motion to stay the proceedings.[7]  See Ashworth, 229 F.R.D. at 531-32.  Thus, this factor weighs against a stay.

6. Public's interest

The public does not have any specific interest in the outcome of this civil case.  The public has generalized interests in the speedy and fair resolution of both civil and criminal cases.  See Digital Equip. Corp., 142 F.R.D. at 14. This factor weighs slightly against a stay.

---

[7] Defendants assert that "it is not clear that [the FBI or the U.S. Attorney's Office] is aware of this litigation or of the pending motion."  Def. Reply Memo. at 9.  Inasmuch as it appears that at least plaintiff's counsel has been in contact with an Assistant U.S. Attorney about the status of the investigation, see Joint Report of the Parties at 2, it is likely that the government is aware of this litigation and could have intervened to join defendants' motion to stay the proceedings.

## B. Balancing the Factors

Because the individual defendants are placed in the difficult position of choosing whether to defend this action or invoke the Fifth Amendment and remain silent, and because they have indicated their intention to do this broadly given they do not know exactly what charges may be brought against them, the weight of the governing factors at this early stage of the case where no discovery has occurred and no other motions have been filed favors an issuance of a stay against the individual defendants.  Although this may impede the ability of plaintiff to collect against defendants if her lawsuit is successful, plaintiff's interests are still protected because the case may go forward against Martin & Seibert, as more fully discussed below.  Thus, the court grants defendant's motion for a stay with respect to defendants Walter Jones, III, Geoffrey Haddad, Michael Stevens, E. Kay Fuller, Susan Snowden, and Nikki Moore Gress, until such time as their involvement in the criminal proceedings end, or until plaintiff can demonstrate that a stay is no longer appropriate.

Balancing the factors discussed previously, granting a stay to defendant Martin & Seibert would prejudice plaintiff without advancing any opposing Fifth Amendment concerns. Because of this, the court must deny a stay as to defendant

Martin & Seibert.  In order to fully protect the Fifth Amendment privilege of the individual defendants while discovery with Martin & Seibert is ongoing, the court additionally bars the acquisition of evidence from the individual defendants on an involuntary basis until further order of the court.

Although counsel for defendants has suggested that any individuals who could answer discovery requests on behalf of Martin & Seibert are either named in this action or may assert a Fifth Amendment privilege, the court will permit the case to proceed as limited herein, which may allow settlement through any available insurance that may cover the defendants in a matter such as this.  In the event that progress in the case is frustrated by the inability to involve the individual defendants, coupled with the invocation of the Fifth Amendment by employees with knowledge of facts in issue, a request for a full or partial lifting of the stay could be the subject of a motion to that end.

An accompanying Order and Notice, applicable to plaintiff and Martin & Seibert, will be issued this same day.

IV.   <u>Conclusion</u>

For the reasons set forth herein, it is accordingly ORDERED that:

1.   The motion to stay civil proceedings be, and it hereby is, granted as to the individual defendants, Walter Jones, III, Geoffrey Haddad, Michael Stevens, E. Kay Fuller, Susan Snowden, and Nikki Moore Gress;

2. Plaintiff may not acquire evidence from the individual defendants involuntarily during the pendency of the stay, unless otherwise ordered by the court; and

3.   The motion to stay civil proceedings be, and it hereby is, denied with respect to defendant Martin & Seibert, L.C.

The Clerk is directed to forward copies of this written opinion to all counsel of record.

Entered: January 5, 2017

John T. Copenhaver, Jr.
United States District Judge

25